UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METHENY,<br><br>         Plaintiff,<br><br>     v.<br><br>JL BEVERAGE COMPANY LLC,<br><br>         Defendant. | Case No.16-cv-00077-HSG<br><br>**ORDER AFFIRMING ORDER & JUDGMENT OF BANKRUPTCY COURT** |

This matter is before this Court on appeal from the United States Bankruptcy Court for the Northern District of California (the "bankruptcy court"), pursuant to 28 U.S.C. § 158(a). Debtor-Appellant Steven S. Metheny appeals the bankruptcy court's order granting summary judgment in favor of JL Beverage Co. and the related judgment, both entered on December 28, 2015. The bankruptcy court concluded that Metheny's debt to JL Beverage — resulting from a 2012 Nevada state court judgment — was non-dischargeable under the Bankruptcy Code. For the following reasons, the Court affirms the bankruptcy court's grant of summary judgment in favor of JL Beverage.

**I.    BACKGROUND**

   **A.    State Court Judgment and Bankruptcy Petition**

On November 15, 2012, a Nevada state court granted default judgment in favor of JL Beverage on its several claims for relief against Metheny: breach of contract, breach of covenant of good faith and fair dealing, misappropriation of trade secrets/unfair competition, breach of fiduciary duty, fraudulent concealment, intentional interference with prospective economic advantage, negligence, declaratory relief, and injunctive relief. Dkt. No. 3-20 at 82. The state court awarded JL Beverage a total of $5,270,174.98 in damages. *Id.*

On March 26, 2014, Metheny filed a Chapter 7 petition for bankruptcy. Dkt. No. 5 at 8.

On June 20, 2014, JL Beverage filed an adversary suit to determine that Metheny's debt to JL Beverage was non-dischargeable under 11 U.S.C. § 523(a) of the Bankruptcy Code. Dkt. No. 3-5; *see also* Dkt. No. 3-18. JL Beverage then moved for summary judgment on that basis. Dkt. No. 3-20.

Shortly thereafter, Metheny moved (1) to convert the bankruptcy case to Chapter 13 and (2) to dismiss the adversary complaint under Federal Rule of Civil Procedure Rule 12(b)(6) because § 523(a) is inapplicable in Chapter 13 cases. Dkt. No. 5 at 8. Metheny served the motion to convert upon all creditors, including JL Beverage. When no creditor objected, the Court entered relief via default, converting the case to Chapter 13. *Id.*

After the conversion, a dispute arose in the adversary case over whether Metheny was permitted to be a Chapter 13 debtor. The bankruptcy court concluded that although the issue of Chapter 13 eligibility can be waived if not timely raised, it could raise eligibility sua sponte under 11 U.S.C. § 105(a) up until the confirmation hearing. Using its authority under § 105(a), the bankruptcy court ordered Metheny to reconvert the case to Chapter 7, holding that Metheny was not an eligible Chapter 13 debtor. *Id.* at 9; Dkt. No. 3-16.

### B. JL Beverage's Motion for Summary Judgment

The bankruptcy court then considered JL Beverage's summary judgment motion in the adversary case. JL Beverage argued that Metheny's liability in the state court action for fraudulent concealment, breach of fiduciary duty, and intentional interference with prospective economic advantage conclusively established that the debt was non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). Dkt. No. 3-20 at 10. The state court had expressly found the following in the underlying default judgment: Metheny was a part-owner and officer of JL Beverage who owed fiduciary duties to JL Beverage pursuant to the company's operating agreement. Dkt. No. 3-20 Ex. A at 3–5. In contravention of those duties, Metheny intentionally and secretly organized his own company. *Id.* at 5–6. He then used JL Beverage's confidential information and intellectual property to interfere with and usurp JL Beverage's corporate opportunities, including JL Beverage's opportunity to sell its assets to another company for over $5 million. *Id.* at 6–7. According to JL Beverage, the doctrine of issue preclusion, or collateral

estoppel, barred the bankruptcy court from re-litigating the state court's legal and factual findings.

The bankruptcy court agreed that issue preclusion applied and that the debt was non-dischargeable based on the state court's findings. The bankruptcy court consequently granted in part and denied in part JL Beverage's summary judgment motion on December 28, 2015. Dkt. No. 3-24. Although the bankruptcy court rejected JL Beverage's argument that the debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as money or property obtained by actual fraud, it agreed that the debt was non-dischargeable under both 11 U.S.C. § 523(a)(4) and § 523(a)(6) as a debt for defalcation in a fiduciary capacity and for willful and malicious injury respectively. *Id.*; *see also* Dkt. No. 3-23.

## II. STANDARD OF REVIEW

A district court reviews a bankruptcy court's decision by applying the same standard of review used by circuit courts when reviewing district court decisions. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001). "Because this dispute was decided on summary judgment, [the district court] must determine whether viewing all evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the [bankruptcy court] correctly applied the relevant substantive law." *In re Mortg. Store, Inc.*, 773 F.3d 990, 994 (9th Cir. 2014) (quotation omitted).

## III. DISCUSSION

Metheny raises three issues on appeal. He argues that the bankruptcy court erred by (1) requiring him to re-convert his case to Chapter 7; (2) determining that the debt to JL Beverage was non-dischargeable under § 523(a)(4) and under § 523(a)(6) based on the state court's findings; and (3) applying Nevada's issue preclusion doctrine to a default judgment. Metheny argues that, as a result, any exceptions from discharge should be reversed.

### A. The Bankruptcy Court Had Authority to Convert the Case to Chapter 7

As a threshold issue, Metheny contends that the bankruptcy court erred in reconverting his case to Chapter 7. The Court disagrees. The bankruptcy court did not err when it sua sponte raised and decided the issue of eligibility to convert from a Chapter 13 to a Chapter 7 case.

3

Although JL Beverage waived any objection to the conversion, the court has the power to determine eligibility up until the confirmation.

"A proceeding that is commenced under Chapter 7 may be converted to a Chapter 13 proceeding and vice versa." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (citing 11 U.S.C. §§ 706(a), 1307(a), and (c)). A bankruptcy court is empowered to convert or dismiss a case sua sponte. *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."); *see also In re Rosson*, 545 F.3d 764, 771 n.8 (9th Cir. 2008) ("Although the statute provides for conversion 'on request of a party . . . or the . . . trustee, . . . ' there is no doubt that the bankruptcy court may also convert on its own motion.") (citing 11 U.S.C. § 105(a)); *In re Labankoff*, No. 09–1300–PAJUK, 2010 WL 6259969, at *5 (9th Cir. BAP June 14, 2010) (collecting cases).[1]

### B. The Bankruptcy Court Did Not Err in Granting Summary Judgment Given the Preclusive Effect of the State Court Judgment

Issue preclusion bars a party from re-litigating an issue necessarily decided in a prior, valid and final judgment. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th Cir. 2002) (citing *Arizona v. California*, 530 U.S. 392, 395 (2000)). The Supreme Court has confirmed that the doctrine applies to dischargeability proceedings under § 523(a). *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)). Under the principles of "full faith and credit," federal courts give prior state-court judgments the same preclusive effect that they have under state law. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003) (citing 28 U.S.C. § 1738). Therefore, Nevada's issue preclusion principles apply here.

Under Nevada law, issue preclusion only applies if: (1) the issue decided in the prior

---

[1] Despite Metheny's conclusory suggestion otherwise, the Supreme Court in *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014), did not limit the bankruptcy court's authority to reconvert a case sua sponte. In *Law*, the Supreme Court merely reiterated that § 105(a) cannot be used to "override explicit mandates of other sections of the Bankruptcy Code." *Id.* at 1194. Metheny has not identified any provision of the Bankruptcy Code that limits a court's ability to re-convert a case to Chapter 7.

litigation was identical to the issue presented in the current action; (2) the initial ruling was on the merits and has become final; (3) the party against whom the judgment is asserted was a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008), *holding modified by Weddell v. Sharp*, 131 Nev. Adv. Op. 28 (2015). Metheny claims that issue preclusion should not apply because the issues in the state court action were not identical to those raised here regarding dischargeability under § 523(a), and because those issues were not actually litigated in the state court action.

### 1.     Identity of Issues and Dischargeability under Section 523(a)

The bankruptcy court concluded that in light of the state court's findings, Metheny's $5 million debt to JL Beverage was non-dischargeable under the exceptions established under both 11 U.S.C. §§ 523(a)(4) and 523(a)(6). To affirm the bankruptcy court's grant of summary judgment, it is enough for the Court to find that one of the two exceptions applies to Metheny's debt to JL Beverage, since the debt would be non-dischargeable under either. The Court addresses Metheny's challenge to the application of § 523(a)(6), which involves a straightforward review of the underlying state law claims. *Cf. F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1137 (9th Cir. 2010) ("We may affirm the grant of summary judgment on any basis supported by the record and need not reach each ground relied upon by the [lower] court.").

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The "willfulness" and "maliciousness" prongs are distinct and analyzed separately. *In re Su*, 290 F.3d 1140, 1147 (9th Cir. 2002) (remanding where bankruptcy court failed to independently analyze the two prongs). Accordingly, to fall within this exception to discharge, the debtor must have acted both willfully and maliciously. *Id.* Metheny argues that the bankruptcy court failed to analyze separately whether his conduct was both willful and malicious under the meaning of the statute.

An injury is "willful" under § 523(a)(6) if the debtor intends the consequences of his action. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "Willful" indicates "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* The focus is

on the debtor's state of mind at the time the injurious action is taken: either the debtor must have the subjective intent to cause harm, or have the subjective belief (*i.e.*, actual knowledge) that harm is substantially certain. *In re Su*, 290 F.3d at 1142, 1145–46. Subjective intent or substantial certainty may be inferred from all of the facts and circumstances established. *In re Jacks*, 266 B.R. 728, 742 (9th Cir. BAP 2001); *see also In re Su*, 290 F.3d at 1146 n.6 ("[T]he bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

The "maliciousness" prong, on the other hand, requires proof of "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001). "[I]t is the wrongful act that must be committed intentionally rather than the injury itself." *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005).

The bankruptcy court did not engage in a detailed analysis in finding Metheny's conduct was both willful and malicious. Looking at the state court's factual findings, the bankruptcy court concluded that "Mr. Metheny's conduct was both willful and malicious in the sense that it was intended — it was not proper — it was unauthorized conduct and it was not done with just cause." Dkt. No. 3-23 at 19. Despite Metheny's arguments to the contrary, however, there is sufficient evidence in the state court findings to support this conclusion.

Metheny's sole argument against the bankruptcy court's finding of willfulness appears to be that the state court default judgment does not clarify whether Metheny *intentionally* injured JL Beverage. The Court disagrees. Metheny acknowledges that the underlying state court judgment was for, *inter alia*, intentional interference with prospective economic advantage. *See* Dkt. No. 7 at 3; *see also* Dkt. No 3-20 at 82. Under Nevada state law, that tort requires:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) *the intent to harm the plaintiff by preventing the relationship*; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

6

*Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nevada*, 106 Nev. 283, 287 (1990) (emphasis added). The Nevada Supreme Court explained that the intent element is satisfied if "the defendant [is] substantially certain that interference with a commercial relationship will occur." *Id.* Accordingly, in order to find for JL Beverage on this claim, the Nevada state court had to find that Metheny was at least "substantially certain" that his conduct would disrupt the relationship between JL Beverage and its prospective buyer. This intent is further supported by the state court's findings of fact that Metheny "secretly creat[ed] a business to compete against [JL Beverage]," had been contacting JL Beverage's "investors, distributors, manufacturers and even its chemist . . . in an effort to further [his] interests to [JL Beverage's] detriment," and had contacted JL Beverage's prospective buyer with a business plan of his own. Dkt. No. 3-20 at 80. Even Metheny's authorities find this level of intentionality amounts to "willfulness" under § 523(a)(6). *In re Su*, 290 F.3d at 1145–46.

Similarly, Metheny argues that the record does not support a finding of malicious conduct. The state court's findings, he suggests, amount to merely reckless conduct. Yet this ignores the actual content of the findings. The state court explicitly found that Metheny created a competing business, falsely represented that it was affiliated with JL Beverage, and contacted JL Beverage's business contacts to pitch his own business plan. Dkt. No. 3-20 at 80. Metheny neither disputes this evidence nor points to any other evidence in the record that these acts were anything but intentionally committed. Moreover, such acts not only would "necessarily cause injury" to JL Beverage, *In re Jercich*, 238 F.3d at 1209, but as explained above, the state court found that Metheny actually intended to cause such injury. The bankruptcy court correctly concluded that Metheny acted both willfully and maliciously. His debt to JL Beverage is consequently non-dischargeable under § 523(a)(6).

### 2.     **Actually Litigated**

Metheny argues that the bankruptcy court erred in applying issue preclusion to a default judgment because such issues were not "actually litigated." The state court entered the default judgment following a prove-up hearing because Metheny had flouted his discovery obligations. That is not the type of default judgment immune from issue preclusion under Nevada law.

Metheny's only citation is to *In re Sandoval*, 232 P.3d 422, 423 (Nev. 2010), in which the Nevada Supreme Court held that the failure to answer a complaint served by publication does not carry issue-preclusive effect. The court reasoned that fundamental fairness counseled against finding preclusive effect where a party may not even have received notice of the action. *Id.* at 424–25. The court emphasized that Sandoval had no knowledge of the action before the default judgment and had not participated in the action in any way prior to the judgment. *Id.* at 425. The Nevada Supreme Court explicitly declined to decide whether issue preclusion is available when a default judgment is based on abusive or dilatory litigation tactics. *Id.* at 424 n.1.

In the absence of controlling Nevada law, this Court must predict how the Nevada Supreme Court would rule. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). The fundamental fairness concerns at issue in *In re Sandoval* are not present here. Metheny does not dispute that he was represented by counsel and participated in the action, the state court granted default judgment because Metheny had failed to meet his discovery obligations, and the court held a prove-up hearing in which Metheny also participated. *See* Dkt. No. 5 at 3–5. The Ninth Circuit has concluded under similar circumstances that such default judgments warrant issue preclusion. In *In re Daily*, 47 F.3d 365 (9th Cir. 1995), for example, the Ninth Circuit found that a default judgment should have preclusive effect where the debtor had deliberately evaded its discovery obligations. To deny preclusive effect in such circumstances "would permit [the debtor] to delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process." *Id.* at 368; *see also In re Ohler*, No. ADV 11-01376-BAM, 2012 WL 5408771, at *4 (Bankr. D. Nev. Nov. 6, 2012) (predicting Nevada Supreme Court would award preclusive effect to default judgment); *In re Gessin*, No. ADV NV-11-05078, 2013 WL 829095, at *6 (9th Cir. BAP Mar. 4, 2013) (same); *accord Matter of Besing*, 981 F.2d 1488, 1493 (5th Cir. 1993). Because of the undisputed nature of the state court default judgment, the bankruptcy court did not err in applying issue preclusion based on that judgment.

To the extent that Metheny also seeks to challenge the merits of the underlying 2012 state court judgment, this is not the appropriate forum. This Court lacks jurisdiction to hear an appeal from a state court judgment.

## IV. CONCLUSION

Because there are no genuine issues of material fact as to whether the debt was non-dischargeable under 11 U.S.C. § 523(a)(6), the Court AFFIRMS the bankruptcy court's decision to grant summary judgment in favor of JL Beverage.  The Clerk of the Court is instructed to close the file.

**IT IS SO ORDERED.**

Dated:  2/17/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge